F. Arnold McDermott Chair State Personnel Board 617 State Services Building 1525 Sherman Street Denver, Colorado 80203
Dear Mr. McDermott:
This opinion is in response to the Personnel Board's letter of November 19, 1979 in which you requested the opinion of this office regarding the above-stated subject.
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents two questions:
1. Does C.R.S. 1973, 24-50-141 (Supp. 1978) repeal the Personnel Board's existing affirmative action rules and terminate the board's authority to enact rules regarding any affirmative action corrective remedy?
 My conclusion is that C.R.S. 1973, 24-50-141 (Supp. 1978) is invalid under the fourteenth amendment to the United States Constitution and various provisions of the state constitution because it aids in the perpetuation of employment discrimination.
2. Is C.R.S. 24-4-108(2)(b) (1979 Sess. Laws ch. 214, pp. 846-847), which provides for the expiration of all Personnel rules on July 1, 1980, a valid exercise of the authority of the general assembly?
 My conclusion is that C.R.S. 24-4-108(2)(b) (1979 Sess. Laws ch. 214, pp. 846-847) is a valid law, if it is interpreted merely as limiting the life span of Personnel Board rules.
ANALYSIS
Three-plus-three rules
The affirmative action corrective rules at issue allow for the addition of names of three qualified individuals from underutilized classes (defined as members of ethnic and racial minorities and women) to those of the three persons ranking highest on the appropriate eligible lists. The rules are popularly known as the "three-plus-three" rules. They were adopted by the Personnel Board on December 10, 1976, effective January 1, 1977, pursuant to rulemaking authority set forth in the Colorado Constitution, article XII, section 14(3). Prior to the enactment of the rules, an attorney general's opinion was issued which opined that, if discrimination existed in the State Personnel System, the State Personnel Department and State Personnel Board were permitted to take corrective affirmative action which included using separate eligibility lists in order to remedy the effects of past discrimination and historical underutilization of minorities or women. Attorney general opinion of March 24, 1976 to William J. Hilty.
The rules were preceded by hearings held by the Personnel Board on March 25, 1976 regarding the question of equal employment opportunity and affirmative action in the State Personnel System. The summary of these hearings is found in a report entitled "Findings of Fact Re: Equal Employment Opportunity And Affirmative Action In The State Personnel System" dated June 16, 1976. Testimony indicated that "the Colorado personnel system has experienced and continues to experience elements of systemic discrimination and underutilization of females and minorities in all aspects of employment and upward mobility." Findings offact, p. 2. The Personnel Board found that the pervasive nature of discriminatory practices in the State Personnel System was widely and abundantly documented. Findings of fact, p. 3. Further specific findings concluded that the underutilization and undercompensation of minorities and women in the State Personnel System resulted from invidious discrimination rather than adherence to rational job qualification criteria.Findings of fact, p. 3.
Current findings and statistics supplied by the State Personnel Department indicate that the discriminatory situation of underutilization and undercompensation continues to exist in Colorado despite the application of affirmative action remedies implemented by the board 2 years ago. Therefore, the administrative finding made by the Personnel Board that discrimination exists in the State Personnel System continues to be valid.
C.R.S. 1973, 24-50-141 (Supp. 1978) provides in relevant part that affirmative action corrective rules, except those relating to grievance and appeal procedures within the State Personnel System and based on allegations of discrimination, are repealed effective January 1, 1980. The statute further provides that the authority of the board to enact any affirmative action corrective remedy dealing with the referral of individuals in addition to the three persons ranking highest on the appropriate eligible list is terminated as of January 1, 1980.
In enacting C.R.S. 1973, 24-50-141 (Supp. 1978), the general assembly recognized the board finding of systemic discrimination, and did not dispute that finding:
 (1) It is the intent of the general assembly to encourage the implementation of equal employment opportunities and affirmative action corrective remedies within the state personnel system which preserve the merit principles contained in section 13 of article XII of the state constitution and this article and which disavow and prohibit the imposition of a mandatory quota system. Until January 1, 1980, and while underutilization of and invidious discrimination against members of ethnic and racial minorities and women exist and continue to exist within the state personnel system, the board is authorized to adopt and implement rules and regulations. . . .
Given the board's finding of the discrimination, the general assembly's concurrence in the finding, and the absence of any evidence that discrimination has ceased, it is my opinion that C.R.S. 1973, 24-50-141 (Supp. 1978) cannot be upheld. As long as discrimination exists in the State Personnel System, thefourteenth amendment to the United States Constitution and various provisions of the Colorado Constitution require that corrective actions must be taken.
The fourteenth amendment imposes the obligation to remedy discrimination on all state agencies in any way responsible for the administration of a discriminatory system. U.S. v. Boardof School Comm'rs, 573 F.2d 400 (7th Cir. 1978); Oliverv. Michigan State Board of Ed., 508 F.2d 178 (6th Cir. 1974), cert. denied, 421 U.S. 963, (1975); Bradleyv. Milliken, 338 F. Supp. 582, (E.D. Mich. 1971),aff'd, 484 F.2d 215 (6th Cir. 1973); Berry v.School District of City of Benton Harbor, 467 F. Supp. 630
(W.D. Mich. 1978).
The administrative findings of the Personnel Board form a valid basis for a non-court-ordered affirmative action plan.Associated General Contractors of Massachusetts v.Altshuler, 490 F.2d 9 (1st Cir. 1973), cert.denied, 416 U.S. 957 (1974); Contractors Association ofEastern Pa. v. Secretary of Labor, 442 F.2d 159 (3d Cir. 1971), cert. denied, 404 U.S. 854 (1971); Porcelliv. Titus, 431 F.2d 1254 (3d Cir. 1970), cert.denied, 402 U.S. 944 (1971). In fact, the United States Constitution imposes on states a duty to take affirmative steps to eliminate the continuing effects of past unconstitutional discrimination. Detroit Police Officers' Ass'n v.Young, 48 L.W. 2277 (6th Cir. Oct. 12, 1979). Thus, once a state makes findings or is aware that discrimination does exist in a state-regulated system, as has occurred in Colorado, the state is under a continuing affirmative duty to correct such discrimination. U.S. v. Board of School Comm'rs.,supra; Oliver v. Michigan State Board ofEd. ., supra; Bradley v. Milliken,supra; Berry v. School District of City of BentonHarbor, supra.
The obligation to remedy discrimination is not confined to the agency directly responsible for the administration of the discriminatory system. As the court said in Berry v. SchoolDistrict of City of Benton Harbor, supra at 635:
 Where, in cases such as this, a pattern of violation of constitutional rights is established, the affirmative obligation under the Fourteenth Amendment to remedy those violations is imposed not only in the local school district, but also upon the state officials.
In the Berry case, not only the school board, which was directly responsible for administering the Department of Education, but also the governor, who was constitutionally directed to take care that the laws be faithfully executed, and the attorney general, as chief law enforcement officer of the state, were sustained as proper defendants in a school desegregation case. The court noted that the obligation of each state agency and official must be scrutinized, and quoted with approval from Oliver v. Michigan State Board,supra, at 633 as follows:
 When such a (discriminatory) situation is alleged to exist, the court must look closely at the actions of each agency to determine whether it has met its constitutional responsibilities. To allow each agency to plead constitutional violations of other agencies in exculpation of its own, would be to mock the Constitution of the United States. . . .
The affirmative duty imposed by the fourteenth amendment on state agencies to remedy the effects of discrimination is also required by the state constitution. The Personnel Board, which derives its rulemaking power from article XII, section 14(3) of the Colorado Constitution, is directed by that constitution to administer a state personnel system free of invidious discrimination. Article XII, section 13(1) and article II, section 19 of the Colorado Constitution further provide a basis for such a system and for affirmative action rules as follows:
 Appointments and promotions to offices and employment in the personnel system of the state shall be made according to merit and fitness, to be ascertained by competitive test competence without regard to race, creed, color, or political affiliation. . . .
Article XII, 13(5).
 Equality of rights under the law shall not be denied or abridged by the State of Colorado or any of its political subdivisions on account of sex.
Article II, section 29.
Since the State Personnel System has been found to be discriminatory in violation of both the federal and the state constitutions, the Personnel Board, as well as other concerned state agencies and officials, is under an affirmative obligation to direct itself to remedying the situation. C.R.S. 1973, 24-50-141
(Supp. 1978), purporting to repeal the three-plus-three rules and to deprive the Personnel Board of authority to reenact such remedies, must yield to the state and federal constitutions. The statute is therefore invalid.
Thus, the board's three-plus-three rules remain in effect, and board's authority to regulate in the area is not terminated.
Expiration of the board's rules
As a general rule, the grant of legislative power to the general assembly is plenary, except as limited or restricted by the Colorado Constitution. Colorado Constitution, article V, section1; Vivian v. Bloom, 115 Colo. 579, 177 P.2d 541 (1947);Van Kleeck v. Ramer, 62 Colo. 4, 156 P. 1108 (1916). Normally it is the legislature which delegates rulemaking authority to the particular governmental agency charged with implementing a legislative program. However, this general scheme does not apply to the Personnel System for the Personnel Board is unusual among state agencies, in that its authority to promulgate rules and regulations is granted directly by the Colorado Constitution which, in article XII, section 14(3), provides:
 The State Personnel Board shall adopt, and may from time to time amend or repeal, rules to implement the provisions of this section and sections 13 and 15 of this article, as amended, and laws enacted pursuant thereto, including but not limited to rules concerning standardization of positions, determination of grades of positions, standards of efficient and competent service, the conduct of competitive examinations of competence, grievance procedures, appeals from actions by appointing authorities, and conduct of hearings by hearing officers where authorized by law.
By the use of the word "shall" in this provision, the constitution directly commands the Personnel Board to promulgate rules in the range of areas indicated in the above listed enumeration. This provision also limits the legislative powers of the general assembly in that it indicates that any laws enacted by the general assembly regarding the Personnel System must be pursuant to article XII, sections 13, 14, and 15. Thus, where the Personnel System is concerned, the general assembly's plenary legislative powers are limited by express provision of the constitution. The limitations include the fact that there is in the constitution a direct grant of specified rulemaking authority to the Personnel Board. Because the source of the Personnel Board's rulemaking authority is constitutional, the general assembly may not by laws eliminate this authority. Therefore, laws regarding the Personnel Board's rulemaking authority must be construed in a manner consistent with preserving the ability of the Personnel Board to meet its constitutionality mandated rulemaking responsibilities.
C.R.S. 1973, 24-4-108(2)(b) (1979 Sess. Laws ch. 214 pp. 846-847) provides for the expiration of all the rules and regulations of the "Department of Personnel," which necessarily includes the rules and regulations of the Colorado State Personnel System enacted by the board, on July 1, 1980, unless the general assembly extends the expiration date as to such rules and regulations. Because this statute may be interpreted as a mere time limitation on the existence of the rules, which may implicitly require board reassessment of the rules, the statute is within the power of the general assembly as granted by the Colorado Constitution. This statute does not inherently preclude the board from exercising its constitutional rulemaking responsibility since it does not prevent the board from reenacting the rules or any part of them, after their designated expiration date. It must be emphasized that, by the use of the words "the State Personnel Board shall adopt rules" in article XII, section 14(3) of the constitution, the board would appear to be under constitutional mandate immediately to reenact rules at least in the enumerated areas, or be in dereliction of its constitutional duties.
So construed, C.R.S. 1973, 24-4-108(2)(b) (1979 Sess. Laws ch. 214 pp. 846-847) is a valid exercise of the power of the general assembly which does not impinge on the Personnel Board's constitutional duty.
SUMMARY
To briefly summarize my opinion, C.R.S. 1973, 24-50-141 (Supp. 1978), repealing the Personnel Board's existing affirmative action rules, is invalid under the applicable provisions of the United States Constitution and the Colorado Constitution because it aids in the perpetuation of employment discrimination. It is also my opinion that C.R.S. 1973, 24-4-108(2)(b) (1979 Sess. Laws ch. 214, pp. 846-847) is valid if interpreted to provide only a time limitation on the existence of the Personnel Board's rules and regulations and not as a prohibition on its constitutional rulemaking status.
Very truly yours,
 J.D. MacFARLANE Attorney General
DISCRIMINATION RULES AND REGULATIONS LEGISLATURE EMPLOYMENT EMPLOYEES
C.R.S. 1973, 24-50-141
C.R.S. 1973, 24-4-108(2)(b)
Colo. Const. art. XII, § 13(1) and (5) Colo. Const. art. XII, § 14(3)
LEGISLATIVE BRANCH PERSONNEL, DEPT. OF State Personnel Bd.
Effect of C.R.S. 1973, 24-50-141 (Supp. 1978) on the repeal of the board's affirmative action rules and the authority of the general assembly to amend or repeal Personnel rules.